**SIGNED this 14th day of December, 2007.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| NEOMI HERRERA | 05-31649 |
| *DEBTOR* | CHAPTER 7 |

### DECISION AND ORDER REGARDING REAFFIRMATION AGREEMENT

This case involves a creditor who failed to get the debtor to execute to a reaffirmation agreement prior to discharge, and so pressed the debtor to file a motion to set aside the discharge for the limited purpose of filing the (untimely) reaffirmation agreement. Can reaffirmation agreements made post-discharge ever be effective? Does it matter if the court grants the sort of motion made here? The short answer to both questions is "no." The statute regulating reaffirmation agreements unequivocally mandates that a reaffirmation agreement can only be effective if it "was made before the granting of the discharge under section 727 . . . of this title." 11 U.S.C. § 524(c)(1). A later order purporting to "set aside" the discharge cannot alter the effect of this statutory requirement. *See Chase Automotive Fin., Inc. v. Kinion (Matter of Kinion)*, 207 F.3d 751, 756 (5th Cir. 2000).

**BACKGROUND**

This is a pre-BAPCPA case. The debtor originally filed under chapter 13 on July 13, 2005. After a number of years performing under the terms of a confirmed chapter 13 plan, circumstances changed for the debtor, and she converted her case to chapter 7 on January 29, 2007 (Docket #23). Upon conversion to a chapter 7 case, a new First Meeting of Creditors was set for March 5, 2007, and was in fact concluded on that date. The chapter 7 trustee filed a "no asset" report, as there was nothing to administer. 60 days later, on May 9, 2007, the debtor received her discharge as scheduled, there having been no objections made (Docket #31). The docket shows that no reaffirmation agreements were filed by the debtor either prior to discharge or within 30 days thereafter. *See* FED.R.BANKR.P. 4008. (Docket #31). The case was closed on May 14, 2007 (Docket #34).

Ford Motor Credit Corporation knew of the chapter 7 status of the bankruptcy (and the deadlines that were running). FMCC was also interested in obtaining a reaffirmation agreement from the debtor. We know both of these facts because on April 4, 2007 (just over a month prior to the discharge date), FMCC filed a motion to compel the debtor to perform her intentions regarding a 2004 Ford Explorer, which she had listed in her schedules, pursuant to section 521(a)(6) (Docket #27). The court[1] granted that motion, but not until May 8, 2007, just a day before the discharge date.[2]

---

[1] The El Paso docket at this point in time was assigned to the Honorable Robert C. McGuire, sitting by designation, pending the appointment of a new bankruptcy judge to fill the position resulting from the retirement of former Chief Judge Larry E. Kelly. Once Judge Craig Gargotta was sworn in, the El Paso docket was re-assigned to me by an Order re-assigning the docket responsibilities of the four judges, effective October 1, 2007.

[2] The order directed the debtor to, within 10 days, either surrender the property, reaffirm the debt with FMCC, or redeem the vehicle, the failing of which would terminate the automatic stay with respect to the Ford Explorer (Docket #30). By the time the order was entered, however, it was already effectively moot. Section 521(a)(6) gives the debtor 45 days to perform her intentions, and provides an automatic remedy in the event she does not — the automatic stay lifts 15 days sooner than it otherwise would (the stay terminates as to every individual debtor upon entry of the discharge, replaced by the discharge injunction). *See* 11 U.S.C. § 521(a)(6). Admittedly, the statutory remedy is pretty

The very next day (May 9, 2007) the debtor received her discharge. No reaffirmation agreement was ever filed by the debtor. The case was subsequently closed on May 14, 2007.

At some point in time (it is not clear whether it was pre-discharge or post-discharge), FMCC insisted that the debtor reaffirm the debt on the vehicle, or FMCC would repossess the vehicle. At FMCC's urging (and under apparent threats to repossess the vehicle), the debtor, through counsel, filed a Motion Setting Aside [sic] Discharge Order to File Reaffirmation Agreement on June 1, 2007 (Docket #35). Initially, Judge McGuire struck this motion because the case had already been closed. The debtor subsequently filed a formal motion to reopen her case (Docket #37), which Judge McGuire granted on August 23, 2007 (Docket #39). Then, on September 28, 2007, the debtor re-filed her Motion to Set Aside Order of Discharge for the Limited Purpose of Filing the Reaffirmation Agreement (Docket #41), which was accompanied by an agreed order granting that relief. This motion did not have a copy of the reaffirmation agreement itself attached, a fact that proves significant later in this decision. When the El Paso docket was formally transferred to this judge on October 1, 2007, this motion was granted (Docket #42).[3]

---

weak, but Congress intended the statute to be self-effectuating, to minimize transaction costs for affected creditors. With that change, however, Congress has made clear that the debtor need no longer be compelled by the court to perform her intentions – the statute itself provides the "or else." After BAPCPA, it is doubtful that the court even has the authority to *compel* the debtor to *perform* her intentions.

Obviously, FMCC wanted the debtor to reaffirm. The debtor did not, at least within the statutory deadline. FMCC was free to immediately pick up the vehicle, but did not do so. The debtor was also free, even after deadline had passed, to make an agreement with FMCC. As is discussed at greater length *infra*, she did not do so. The statute affords the creditor *no* remedy if the debtor simply fails to make such an agreement, other than the right to resort to whatever *in rem* rights it might have under non-bankruptcy law.

[3] It was on this very date that I began presiding over the El Paso docket. This motion was granted perhaps improvidently, though that matters little, for reasons more fully explained later in this opinion. The motion sought only leave to *file* the reaffirmation agreement. Whether the reaffirmation agreement itself could be effective as a matter of law is another matter entirely. Once the reaffirmation agreement was filed, it became evident that there were problems on the face of the agreement, leading this court to set the matter for hearing, on notice to both the debtor and the affected creditor. *See* 11 U.S.C. § 524(c)(1), (d) (West 2004).

FMCC then filed the reaffirmation agreement itself on October 3, 2007 (Docket #43). When the court saw the actual agreement that had been the subject of the "motion to set aside discharge," it became concerned. The date of execution of the agreement itself was May 25, 2007 – a date clearly *after* the debtor's discharge. The court decided to set a hearing on the reaffirmation agreement, on notice to the debtor and FMCC, to find out what was going on. The hearing was set for November 14, 2007 (Docket #49). The debtor appeared at the hearing, but FMCC did not.

At the hearing, the debtor confirmed that indeed she *had* executed the agreement *after* the date of her discharge, but that she did so under threats from FMCC that they would otherwise pick up the vehicle. The court learned at the hearing that, in fact, she was not the person driving this vehicle, and she is not the person making the payments, either. It is her ex-husband who has the vehicle, and it is he who is making the payments (though, of course, she is still on the retail installment agreement). According to the debtor, he is in fact current on these payments. The debtor testified that she had an amicable relationship with her ex-husband, and did not want to see him lose the vehicle. Thus, she agreed to reaffirm the debt, thinking, she said, that she had no other choice. Her counsel advised the court that, in fact, FMCC (at least in the El Paso area) had been routinely making good on threats to repossess vehicles if FMCC did not receive executed reaffirmation agreements, even from debtors who are current on their payments. According to the debtor's testimony, she did not realize that, if her husband failed to make the car payments and the vehicle were repossessed, the effect of her signing this agreement was to subject her to personal liability for any deficiency.

Evidently, FMCC realized that the statute is clear on its face – such agreements cannot be effective unless made *before* discharge. For this reason, they apparently urged the debtor to file the

"motion to set aside discharge for the limited purpose of filing reaffirmation agreement." The order that was tendered with this motion was an agreed order, signed also by counsel for FMCC. By this *fiat*, then, FMCC evidently intended to *move the discharge date* to a date after the date of execution of the agreement, hoping this *ex post* tactic would cure FMCC's error in not getting an agreement executed prior to the debtor receiving her discharge.[4]

### DISCUSSION

There is virtually no question regarding the preconditions for when a reaffirmation agreement is enforceable. The statute's language could not be clearer. In pertinent part, it states that

> An agreement between a holder of a claim and the debtor . . . *is enforceable* only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, *only if* –
> (1) such agreement was *made before the granting of the discharge* under section 727 . . . of this title.

11 U.S.C. § 524(c)(1) (emphasis supplied). The "granting of the discharge" is an easily identified event in any bankruptcy case — it occurs only one time in the case: when the discharge is entered on the docket, usually at or shortly after the time period specified in Rule 4004 of the Federal Rules of Bankruptcy Procedure. In this case, that date was May 9, 2007. The agreement must be *made* prior to that specific event (though, in pre-BAPCPA cases, it can be filed with the court up to 30 days after the date of the discharge). The statute is explicit that the requirement to make the agreement *before* the "granting of the discharge" event applies, even when the debtor has expressly agreed to *waive* discharge with respect to the particular debt in question. In other words, the deadline for making the agreement is a hard deadline, one which cannot be altered even by the agreement of

---

[4] Admittedly, the court is drawing inferences from the state of the docket, the pleadings, the timing, and such. FMCC, though noticed, did not appear to give the court their version of the facts.

both parties to the proposed agreement. *See* 11 U.S.C. § 524(c)(1).

The Fifth Circuit has ruled that this requirement in fact means what it says. *See Chase Automotive Fin., Inc. v. Kinion (Matter of Kinion),* 207 F.3d 751, 756 (5th Cir. 2000); 11 U.S.C. § 524(c)(1) (West 2004). The reaffirmation agreement before the court in that case was not executed before the granting of the discharge. The debtor's attorney had also failed to countersign the agreement before filing it with the bankruptcy court. Said the court, "*Twice* flawed as it was, the proposed reaffirmation agreement was unenforceable." *See id.* (emphasis added). The court added that the creditor was free to send the debtor a proposed reaffirmation agreement prior to discharge, and doing so would not have violated the law. The creditor could not, of course, *compel* the debtor to sign the agreement, but it could at least make sure that the *opportunity* to sign such an agreement was presented to the debtor far enough in advance of the discharge date that it could be "made before the granting of the discharge." *See id.*[5] Similarly, in our case, there was nothing that prevented FMCC from presenting a reaffirmation agreement form to the debtor before the granting of the discharge — indeed it appears from the docket that that is exactly what FMCC wanted to happen. For some reason, however, the agreement was not executed prior to the granting of the discharge. *Kinion* says that such an agreement is thus unenforceable.

Nor is the Fifth Circuit alone in so holding. Virtually all circuits require strict compliance with the requirements spelled out in section 524(c), and all agree that the *fiat* of executing the reaffirmation agreement *after* the granting of a discharge renders the agreement unenforceable as a matter of law. *See, e.g., Whitehouse v. LaRoche,* 277 F.3d 568, 574 (1st Cir. 2002); *Lichtenstein v.*

---

[5] The focus of the court in *Kinion* was actually on the lower court's having disallowed the creditor's *lien* due to the creditor's failure to attach proof of lien documentation to the reaffirmation agreement, as apparently required under that court's local rules. The holding of the court led to the inference that the agreement was made post-discharge.

*Barbanel,* 161 Fed. Appx. 461 (6th Cir. 2005); *In re Turner,* 156 F.3d 713, 718 (7th Cir. 1998); *Lee v. Yeutter,* 917 F.2d 1104, 1106 n.3 (8th Cir. 1990); *Republic Bank of Ca. v. Getzoff (In re Getzoff),* 180 B.R. 572, 574-75 (9th Cir. B.A.P. 1995); *Schott v. WyHy Fed. Credit Union (In re Schott),* 282 B.R. 1, 7 (10th Cir. B.A.P. 2002). Because reaffirmation agreements are effectively waivers of discharge with respect to a particular creditor, they are *exceptions* to the "fresh start" policy of the bankruptcy process. As such, the reaffirmation exception is strictly construed, and the requirements imposed for their enforceability are themselves enforced rigidly. *See Matter of Duke,* 79 F.3d at 44; *In re Jamo,* 283 F.3d 392, 398 (1st Cir. 2002) (citations omitted); *see also In re Bennett,* 298 F.3d 1059, 1067 (9th Cir. 2002) (citing *Republic Bank of Cal. v. Getzoff (In re Getzoff),* 180 B.R. 572, 574 (9th Cir. B.A.P. 1995)).[6]

In this case, the "granting of the discharge" event was May 9, 2007. Five months later, on October 3, 2007, FMCC filed this reaffirmation agreement with the court.[7] The face of the agreement shows that it was executed on May 25, 2007, well after the "granting of the discharge" event specified as the deadline for making such agreements. *See* 11 U.S.C. § 524(c)(1). Under the

---

[6] To repeat the footnote in *Whitehouse v. LaRoche*, "These detailed prophylactic measures were designed to protect unwitting debtors from creditors *bent on coercing* reaffirmations in relation to otherwise dischargeable pre-petition debts. . . ." 277 F.3d, at 575 n. 4 (emphasis added). The court went on to quote *Collier*: "The subsections have been applied *strictly* by courts to carry out their remedial purposes and to ensure that they are not evaded by agreements . . . having the effect of waiving protections of the discharge." *Id.* (citing 4 *Collier on Bankruptcy* ¶ 524.04, at 524-30) (emphasis supplied by the quoting court).

[7] The court's electronic docketing system identifies who files a document. The filing date technically violates the bankruptcy rules, which provide that such agreements must be filed no later than the date set for a discharge hearing, which must be set no more than 30 days after the granting of the discharge. *See* FED.R.BANKR.P. 4008. No discharge hearings are held in this district. Thus, the deadline for filing in this district is effectively prior to discharge. This court has previously ruled that the date on which a reaffirmation agreement is filed with the court does not necessarily affect the validity of the agreement, on the theory that the statute itself sets no formal deadline for filing as a prerequisite for the agreement's enforceability. *See In re Merritt*, 366 B.R. 637, 640 (Bankr. W.D. Tex. 2007). However, the filing date of the agreement is important for another reason: not until the court *saw* the agreement could the court know that the agreement was unenforceable as a matter of law. When the debtor filed its agreed motion to "set aside" the discharge for the limited purpose of *filing* (the pleading's own term) a reaffirmation agreement, no copy of the proposed agreement was attached. This issue is discussed at greater length *infra*.

plain language of section 524(c)(1), as strictly construed by the courts, this reaffirmation agreement is not enforceable as a matter of law. *See id.*

There is a wrinkle here, however. At FMCC's urging, the debtor filed a motion to "set aside" the discharge for the limited purpose of filing this reaffirmation agreement — and that motion was granted. Thus, it might be argued, the court is bound to find this reaffirmation to be "in compliance" with section 524(c)(1) because the order effectively *moved* the discharge date (at least as to this creditor) to a point in time *after* May 25, 2007 (the date the agreement was *made*).

At the outset, it is appropriate to note that a court, of course, is not "estopped" from later ruling in a fashion that might be construed to contradict a prior ruling involving the same matter. Estoppel is a concept applied to litigants, not courts. *See United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 258-59 (5th Cir. 1991). A party might urge "law of the case" as a basis for suggesting that a court be bound by its prior order, but even the law of the case doctrine does not prevent a court from revising its view of the law if it believes its earlier rulings might have been in error. *See United States v. Matthews,* 312 F.3d 652, 657 (5th Cir. 2002) (citing *United States v. Becerra,* 155 F.3d 752, 752-53 (5th Cir. 1998)) (noting that the "law of the case" doctrine is not a jurisdictional rule, but a discretionary practice — courts may reexamine previous decisions where "the earlier decision is clearly erroneous and would work a manifest injustice").

More importantly, however, the effort to "set aside" the discharge could not, as a matter of law, and should not, as a matter of policy, be effective to move the clear deadline set by the statute.

Firstly, as a matter of law, the requirement is that the agreement be made before the *granting of the discharge under section 727. See* 11 U.S.C. § 524(c)(1) (emphasis added). That is an easily identifiable event, duly noticed in advance to all creditors. Creditors are on notice to act promptly,

and to at least try to obtain an agreement with the debtor before that deadline. If they fail, whether through the creditor's lack of diligence or the debtor's recalcitrance, then so be it. The Fifth Circuit could not have been clearer on this point in *Kinion*. Any later effort to "set aside" the discharge, as was done here, could not alter the "hard date" set by the statute, *i.e.*, the date of "the granting of the discharge." In this case, that date was May 9, 2007.

In all events, a fair construction of the pleading filed by the debtor here is that it is, at best, a *waiver* of the discharge as to this creditor. The motion does not seek to generally set aside the discharge (assuming such a thing were even possible), and specifically adverts to its limited purpose — to allow for the filing of this reaffirmation agreement with FMCC.[8] Functionally, then, the motion operated as a *waiver* of discharge as to this creditor, nothing more and nothing less. The statute states, with clarity, that its requirements for enforceability apply even if "discharge of such debt is waived." 11 U.S.C. § 524(c). Properly construed, the motion and subsequent order should have no legal impact on the enforceability of this agreement. The statute itself anticipated such tactics, and expressly forbade them. *See Whitehouse,* 277 F.3d at 574 n.4 ("These detailed prophylactic measures were designed to protect unwitting debtors from creditors bent on coercing reaffirmations in relation to otherwise dischargeable pre-petition debts.") (citing *In re Turner,* 156

---

[8] The language of the Agreed Order states:
> The Order Discharging Debtor(s) previously entered by this Court [on May 9, 2007] is set aside *for the limited purpose of allowing the Debtor(s) to execute the reaffirmation agreement between Ford Motor Credit Company LLC and the Debtor(s) with regard to the 2004 Ford Explorer . . . and deliver it to counsel for the Creditor and for the purpose of allowing counsel for the Creditor to file the reaffirmation agreement with the Court.*

*Id.* (Docket # 42) (emphasis added).

F.3d 713, 718 (7th Cir. 1998)).[9] FMCC simply cannot expect this Agreed Order to overwrite the requirements of section 524(c). And FMCC cannot expect this court to rubber stamp an agreement which does not comply with the clear requirements of the Bankruptcy Code. *See In re Hovestadt,* 193 B.R. 382, 386-87 (Bankr. D. Mass. 1996).

The Agreed Order in question was at best an interim order that enabled either the debtor or FMCC to *file* the reaffirmation agreement with the court.[10] It remained for the court, after the filing was accomplished, to then determine whether the agreement that was filed was enforceable. The court could not have made that determination when the motion to set aside was filed, because the reaffirmation agreement itself was not attached to that motion. Only after it was filed a few days later could the court for the first time evaluate the agreement against the standards of section 524(c). In any event, to the extent that the Agreed Order could be viewed as an extension of the debtor's discharge, it will itself be vacated.[11]

There is a deeper policy reason for prohibiting the tactic pursued here. Let us suppose, for the sake of argument, that it *were* possible to move the "granting of the discharge event" by the *fiat*

---

[9] Perhaps one might argue that a court could sanction such post-discharge reaffirmation agreements pursuant to its equitable powers in Section 105(a). *See* 11 U.S.C. § 105(a). But that power is limited and does not authorize a court to alter express provisions of the Bankruptcy Code. *See Wells Fargo Bank of Texas, N.A. v. Sommers (In re Amco Ins.),* 444 F.3d 690, 695 (5th Cir. 2006) (quoting *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.),* 378 F.3d 511, 523 (5th Cir. 2004) (internal citations omitted)). The power granted by Section 105(a) may only be used by a court to "enforce or implement its own orders." *Id.* at 696 n.4. In all events, Section 105(a) does not authorize a court to create remedies previously unknown to equity jurisprudence. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 332, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999).

[10] Indeed, any other view would constitute a remedy "previously unknown to equity jurisprudence." *See Alliance Bond Fund, Inc.,* 527 U.S. at 332.

[11] There seems to have been some confusion on this point with the clerk's office, as another discharge order was entered on the docket on October 4, 2007. To clarify this court's conclusion, the May 9, 2007 discharge order is wholly unaffected by any subsequent action of this court, the debtor, or FMCC. As a result, this October 4, 2007 discharge order was entered unnecessarily because the May 9, 2007 order remains effective notwithstanding the reopening of this case and the Agreed Order purporting to set aside the discharge for the limited purpose of filing a reaffirmation agreement with the court. This court will, therefore, issue a separate order vacating that October 4, 2007 discharge order.

of a motion such as the one filed in this case, such that an otherwise untimely reaffirmation agreement could then *become* timely. Were that the law, then creditors could exert substantial economic leverage *after* the discharge had been granted, to induce debtors to reaffirm a pre-petition debt, comfortable that the same leverage could be used to induce the debtors to file a motion such as the one filed here. The deadline imposed by section 524(c)(1) for obtaining these agreements would be effectively eviscerated. But even more pernicious would be the impact on the efficacy of the discharge itself. *Many* creditors, both secured and unsecured, enjoy *some* sort of leverage over debtors. A rule of law that permitted the section 524(c)(1) deadline to be moved around to accommodate "late" reaffirmations would also invite rampant violations of the discharge itself. In fact, the discharge, as a guaranty of a fresh start, would become a dead letter. There would be no fresh start for debtors. Instead, debtors would routinely be pressured by pre-petition creditors of all stripes to execute reaffirmation agreements, and the pressure could go on for months or even years after discharge. Creditors would be secure in the knowledge that they could always prevail on the put-upon debtor to sign off on a "motion to set aside discharge" that would shelter their otherwise untimely reaffirmation agreement (and incidentally insulate the creditor from liability for "violating" the discharge injunction). It is this very prospect that confirms that it cannot be the case that "the granting of the discharge" is a moveable event. *See In re Latanowich,* 207 B.R. 326, 334 (Bankr. D. Mass. 1997) (noting that one of the purposes for imposing a permanent injunction along with the discharge order was "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it") (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 80-81 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5866; H.R. Rep. No. 595, 95th Cong., 1st Sess. 365-366 (1977)).

The better rule of law is one that interprets section 524(c)(1) in the larger context of section 524(a), which brings down the curtain on all further efforts by creditors to exert pressure on a debtor to pay any pre-petition debts as a personal liability. As the Fifth Circuit in *Kinion* explained, a creditor is free to exploit such economic leverage as it might have to induce a debtor to enter into a reaffirmation agreement *prior* to the granting of the discharge. *See Matter of Kinion*, 207 F.3d at 756. FMCC had a window between April 19, 2007 (45 days after the conclusion of the creditors' meeting) and May 9, 2007 in which it could have repossessed the vehicle prior to the imposition of the discharge injunction without fear of violating the automatic stay — and could have used the threat of such action as leverage to encourage the debtor to make an agreement with FMCC. FMCC took no action, however. Once the critical event of "the granting of the discharge" took place, however, the creditor was *not* free to further exert that leverage. A discharge in a case —

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset any such debt as a personal liability of the debtor, *whether or not discharge of such debt is waived*.

11 U.S.C. § 524(a)(2) (emphasis added). All further attempts to collect on the debt as a personal liability of the debtor must, as a matter of federal law, cease at that point in time. *See Houston v. Edgeworth (Matter of Edgeworth),* 993 F.2d 51, 53 (5th Cir. 1993). Efforts to pressure a debtor into entering into a reaffirmation agreement post-discharge — including efforts to pressure a debtor into "setting aside" the discharge (even assuming such a thing were ever legally possible) — are clear, clean, and obvious violations of the discharge injunction. *See Watkins v. Guardian Loan Co. of Massapequa, Inc. (In re Watkins),* 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999) (willful violation by conditioning a post-discharge loan upon the repayment of a discharged debt); *see also Miles v.*

*Clarke (In re Miles),* 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) (post-discharge attempt to recover or seek indemnity from a co-signer on a discharged deficiency judgment).[12] Allowing this reaffirmation agreement to stand as an enforceable agreement would only work to countenance such violations. *See In re Latanowich,* 207 B.R. at 336 (quoting *In re Bowling,* 116 B.R. 659, 664 (Bankr. S.D. Ind. 1990)) (emphasizing that *any* transaction which leaves the debtor with the belief that she is obligated to pay a discharged debt cannot be characterized as a voluntary repayment within the meaning of section 524(f)). That this court will not do — and neither should any court in this country.

It can only be hoped that the events of this case are a one-off occurrence. If FMCC is routinely pursuing the course of action that it pursued in this case, then it could face significant liability on a scale not seen since the debacle involving Sears, Roebuck & Co. more than a decade ago. *See, e.g., In re Iappini,* 192 B.R. 8, 10 (Bankr. D. Mass. 1995) (condemning the practice of failing to file the agreement with the court); *Conley v. Sears, Roebuck, & Co.,* 222 B.R. 181, 183-85 (D. Mass. 1998) (retelling the procedural history in an opinion approving the attorneys' fees following a nationwide class action settlement ); *see also generally In re Latanowich,* 207 B.R. at 328-37(detailing the practices and the reasons for condemning them). As a matter of public policy,

---

[12] The secured creditor who fails to obtain a timely reaffirmation agreement may of course continue to enforce its claim as an *in rem* liability — and threats to repossess the collateral unless the debtor pays the indebtedness according to its terms are *not* violations of the discharge injunction. They are simply legitimate steps taken to enforce the *in rem* liability. Indeed, it is for this reason that home equity mortgage lenders in Texas do not need reaffirmation agreements in order to insulate themselves from accusations that they might be violating the discharge injunction by enforcing the home equity loan. *See generally In re Pfeil,* 2007 WL 2034295, Bankr. Case No. 07-51241-C (Bankr. W.D. Tex. July 10, 2007). These loans are by definition *in rem* obligations in Texas, by virtue of the Texas Constitution, so that there is never any personal liability on the loan in the first place. Thus, there is nothing to "reaffirm." *See id.* Not before the court today is the unique question whether, as a matter of non-bankruptcy law, a creditor with a claim secured by a motor vehicle may claim a default and enforce its *in rem* remedies against the collateral on the sole basis that the debtor in question failed to timely enter into a reaffirmation agreement, even though the debtor is otherwise current on its payments to the lender, has properly insured the vehicle, and is otherwise in all respects not in default.

this sort of practice could not be tolerated by any court in the country. If FMCC has been attempting to give debtors the impression that untimely reaffirmation agreements such as this one are enforceable, then FMCC would do well to review the *In re Latanowich* opinion.

Sadly, the facts of this case move the court to anticipate another equally unsavory tactic that some creditors might be tempted to try — backdating reaffirmation agreements, then filing them with the court. At the least, the practice would be fraudulent, exposing the creditor to the same sort of liability that faced Sears. In addition, filed agreements that are backdated in all likelihood would violate the strictures of Rule 9011, given that they would contain a false representation designed to make the agreement look enforceable. Perhaps most seriously, such a tactic, if done knowingly and fraudulently, could be seen to be a violation of federal criminal law. *See* 18 U.S.C. § 157. One would hope that most creditors (and certainly their attorneys) would just as soon "not go there."

## CONCLUSION

For the reasons stated, the reaffirmation agreement dated May 25, 2007 is unenforceable as a matter of law. Furthermore, the motion to set aside the May 9, 2007 discharge order is ineffective as a matter of law to alter the strict requirements of section 524(c)(1). The agreed order purporting to "set aside" the discharge is accordingly, by this order, vacated. The clerk of court is directed, upon the entry of this order, to close the case.

This is a final order.

# # #